■ AIGA RAUDZENS, an Infant, et al., Respondents, v NEW YORK CITY TRANSIT AUTHORITY, Appellant, et al., Defendant. — In a negligence action to recover damages for personal injuries, etc., defendant New York City Transit Authority appeals from an order of the Supreme Court, Queens County (Vitale, J.), dated October 24, 1980, which (1) granted plaintiffs' motion to set aside a jury verdict in favor of the Transit Authority on the ground that it was contrary to the weight of the evidence, and (2) directed a new trial. Order affirmed, without costs or disbursements. This action arose from an accident in which a bus ran over a pedestrian. Plaintiffs' theory at the bifurcated trial was that Aiga Raudzens, on leaving the sidewalk to cross the street, stumbled into the side of the moving bus and fell onto the street behind the bus. When the driver heard the thump, he stopped the bus, and since its front end was projecting into the intersection, he backed it up, over Aiga's legs. Under defendant New York City Transit Authority's (defendant) theory, Aiga tripped and fell between the rear door and rear wheels of the bus and was run over as it was traveling forward. It is apparent, then, that resolution of the case turned on whether the bus was proceeding forward or backward when it ran over Aiga. The undisputed facts establish that the bus was moving at about 8 to 10 miles per hour at the time the infant plaintiff fell against it, the bus was 6 to 24 inches away from an eight-inch high curb, and the ground clearance of the bus was 15 inches. Although the bus driver denied reversing the bus, one witness asserted that the bus stopped in the intersection and then went back approximately 5 to 6 feet. Two bus passengers testified that there was nothing unusual about the operation of the bus, but neither specifically denied that the bus went backwards. Two expert witnesses produced by the plaintiffs testified

that Aiga's injuries could only have occurred if the bus backed up. The first of these experts, a civil engineer, declared that the infant plaintiff could not have fit underneath the side of the bus considering its ground clearance, its movement and the space between it and the curb. The second witness, a forensic pathologist, relied on the nature of the injuries to support plaintiffs' theory as to how the accident happened. According to the pathologist, if Aiga fell as defendant claims, she would have been at an angle to the bus, with part of her body on the curb. The nature of the injuries, however, is consistent with Aiga lying flat on her stomach with her head toward the middle of the street. On this appeal from the trial court's order setting aside the jury's verdict in favor of the defendant, the question is whether the evidence so preponderated in favor of the plaintiffs that the verdict could not have been reached on any fair interpretation of the evidence (*Yacano v De Fayette,* 67 AD2d 1059; *Pertofsky v Drucks,* 16 AD2d 690). After viewing the evidence in the light most favorable to the defendant, we can discern no fair interpretation of the evidence in this record which would support defendant's version of the occurrence, and we do not find the trial court's exercise of discretion unreasonable (see *Pickard v Koenigstreuter,* 70 AD2d 693). As the trial court noted, the bus driver's testimony is contradicted by the physical facts. (Since the cause of the injuries seems intertwined with their nature and there is a question of amnesia as well, the retrial should encompass the issues of both liability and damages [see *Keating v Eng,* 50 AD2d 898; *Naumann v Richardson,* 76 AD2d 917].) Accordingly, there should be an affirmance. Lazer, J. P., Rabin and Margett, JJ., concur.

Cohalan, J., dissents and votes to reverse the order and to reinstate the jury verdict in favor of the defendant New York City Transit Authority, with the following memorandum: The jury, by a five to one verdict, found that the bus driver was not one whit to blame for the accident and the serious injuries that befell the 16-year-old plaintiff. This fact attains great significance when we realize that the accident happened after September 1, 1975, the date when comparative negligence was added to the CPLR (L 1975, ch 69, § 1). The incident occurred in broad daylight on the morning of April 15, 1977. The young woman in some unexplained fashion stumbled into the side of the bus and was run over by the right rear wheels. Three witnesses, two of whom were passengers in the bus, testified that the bus never moved after it was stopped. The necessary inference is that it could not have backed up to run over the infant plaintiff. The third witness, the bus driver (obviously an interested witness), also insisted that he had not reversed the bus after he "felt a nudge * * * like I went over something in the rear wheels". He brought the bus to an immediate halt by applying the hand brake and turning off the ignition. The bus was 40 feet, 4 inches long and 10 feet wide. The infant plaintiff was found in the roadway 3 to 5 feet behind it. The sole self-styled eyewitness called by the plaintiffs testified at the trial in June, 1980 that as he watched the running plaintiff, she "appeared to stumble, put her hands up on the bus, and then she disappeared behind the bus". He also stated that the bus stopped 8 to 10 feet into the intersection, and then backed up "five to six feet". On cross-examination, this witness was confronted with a written statement that he had signed for the Transit Authority on April 25, 1977, just 10 days after the accident occurred. The content of the statement was in sharp contract to his courtroom testimony more than three years later. It reads in pertinent part: "The next thing I know is that somehow the girl fell or stumbled from the sidewalk and into the right rear side of the bus. I then saw the girl place her hands against the side of the bus near the rear wheel. *At this point I think that the wheel went over the girl.* I then crossed the street and when I yelled to the bus driver to stop

I saw that the girl was lying in back of the bus about two or three feet. The bus driver who did not know what had happened stopped about two or three feet in the intersection. He then backed up about a foot." (Emphasis added.) The plaintiffs called two "expert" witnesses. One was a licensed civil engineer; the other a forensic pathologist. They were called to and did give testimony that from the facts, figures and hypothetical questions presented, the only credible theory was that the bus driver had reversed the vehicle and in that fashion had caused the injuries sustained by the infant plaintiff. From the verdict, we know that the jury refused to accept the theories advanced by these witnesses. An amusing aside about the engineer is that for all his professional credentials, he was ignorant on a matter of simple arithmetic. Prior testimony had estimated the speed of the bus at impact as 8 to 10 miles per hour. He apparently accepted the latter figure and said that at 10 miles per hour, a vehicle would travel 16 feet per second. Arithmetic, as a branch of mathematics, is an exact discipline. Thus, for example, an object moving at 60 miles per hour travels 88 feet per second to total 5,280 feet in a minute. Obviously then, at 10 miles per hour, it does one sixth of 88 feet, or fourteen and two-thirds feet per second. If the remainder of the engineer's testimony was as inaccurate as in the above example, his credibility was shattered beyond redemption. In *Yandian v Merlis* (34 AD2d 582, 583) our court held that: "It is well-settled law that in a negligence action a jury verdict in favor of defendants should not be set aside on the ground that it is against the weight of evidence unless it is clear from the record that the jury could not have reached its conclusion on any fair interpretation of the evidence" (citing cases). In *Pertofsky v Drucks* (16 AD2d 690), wherein a jury verdict for defendant was set aside by the trial court and by us reinstated, we went so far as to say that: "Despite the fact that plaintiff's testimony constituted a prima facie showing of negligence on the part of defendant, and despite the fact that no evidence was offered on defendant's behalf as to how the accident occurred, the jury was not required to resolve the issue of negligence against the defendant" (citing cases); and added: "If a jury's verdict is in defendant's favor, a motion to set such verdict aside as contrary to the weight of the evidence stands on a different footing than a motion to set aside a jury's verdict in plaintiff's favor. When the motion is by the plaintiff to set aside a verdict in favor of defendant, the motion should not be granted unless the evidence preponderated so greatly in plaintiff's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence". Certainly, the jury was not bound to accept the opinions of plaintiffs' expert witnesses, who were hired for the occasion, as against the testimony of persons present at the scene. The jurors heard all the testimony, observed the demeanor of the witnesses, evaluated their testimony and determined where the truth lay on the basis of the credible evidence. Thus, much as I sympathize with the plight of the infant plaintiff, I would reinstate the verdict for the defendant Transit Authority.